[Civ. No. 8697. Fourth Dist., Div. Two. Apr. 19, 1968.]

KENNETH G. CARLSEN et al., Plaintiffs and Appellants, v. H. E. ZANE et al., Defendants and Respondents.

---

Miller & Cardin and George H. Miller for Plaintiffs and Appellants.

Carter & Coudures and Charles H. Carter for Defendants and Respondents.

KERRIGAN, J.—The plaintiffs are copartners and licensed real estate brokers who entered into a 90-day written "exclusive right to sell" agreement with the defendants on January 17, 1965. The agreement contained the following provisions: that the plaintiffs had the exclusive and irrevocable right to sell a 15-acre parcel of unimproved land owned by the defendants until the expiration date of April 17, 1965, for the sum of $3,600 per acre; that the brokers had the right to negotiate

sales of the 15 acres in separate 5-acre parcels; that the owners agreed to pay the broker 10 percent of the selling price; and that the "owner agrees to pay [the brokers] said percent of the list price if owner withdraws said property from sale . . . or otherwise prevents performance hereunder by [the brokers] during the said period of [the] agreement regardless of whether a buyer was or was not obtained."

Within the term of the listing agreement, in mid-March 1965, the defendant-owners sold 10 of the 15 acres to a personal friend for the sum of $2,600 per acre, comprising the total sum of $26,000. The remaining five acres were not sold.

Plaintiffs filed suit to recover $5,400 plus interest and attorney fees. The brokers contend that they are entitled to a 10 percent commission of the list price of $54,000 for the entire 15 acres even though the 10-acre parcel was sold by defendants for less than the list price, and 5 acres remained unsold. Defendants countered by filing a cross-complaint for fraud on the ground that the brokers had falsely represented that they had an immediate buyer of 5 acres at the list price of $3,600 per acre prior to the execution of the exclusive listing agreement, which constituted the inducement for signing the listing, and sought recovery of $5,000 exemplary damages.

The trial court found, "That the defendants [sic-plaintiffs] did not, in fact, exercise due diligence in procuring a purchaser . . . even though during the existence of the 'exclusive right to sell' agreement a portion of the land [10 acres] was sold by reason of defendants' own efforts," and ruled that plaintiffs were not entitled to recover. The judgment also provided that the defendants take nothing whatsoever by reason of their cross-complaint. No appeal has been taken from the judgment on the cross-action.

Although the plaintiffs' attack on the findings and judgment is stated in varying forms, the sole issue on appeal is whether an owner of real property is liable for payment of a broker's commission under an "exclusive right to sell" agreement where the owner sells the real property to a third party during the term of the agreement as a result of his own efforts and the broker is not the procuring cause of the sale.

Exclusive listing agreements are of two types. (*Tetrick* v. *Sloan*, 170 Cal.App.2d 540, 546-547 [339 P.2d 613].) An "exclusive agency" agreement is interpreted as prohibiting the owner from selling the property through the agency of another broker during the listing period (*Lowe* v. *Loyd*, 93

Cal.App.2d 684, 686 [209 P.2d 851]), but the owner may sell the property through his own efforts. (*E. A. Strout Western Realty Agency* v. *Gregoire,* 101 Cal.App.2d 512, 518 [225 P.2d 585]; *Faith* v. *Meisetschlager,* 45 Cal.App. 7, 9 [187 P. 61].) However, an "exclusive right to sell" agreement (exclusive sales contract) prohibits the owner from selling both personally (*Kimmell* v. *Skelly,* 130 Cal. 555, 558 [62 P. 1067]; *Ertell* v. *Lloyds Food Products, Inc.,* 115 Cal.App.2d 615, 617 [252 P.2d 683]) and through another broker (*Wright* v. *Vernon,* 81 Cal.App.2d 346, 347 [183 P.2d 908]), without incurring liability for a commission to the original broker. (*Harcourt* v. *Stockton Food Products, Inc.,* 113 Cal.App.2d 901, 905 [249 P.2d 30]; *Fleming* v. *Dolfin,* 214 Cal. 269, 271 [4 P.2d 776, 78 A.L.R. 585].) ▊ In the event the owner breaches this type of agreement, he is liable for the commission which would have accrued if the broker had procured a purchaser during the period of the listing. (*Justy* v. *Erro,* 16 Cal.App. 519, 527-528 [117 P. 575].) The broker need not show that he could have performed by tendering a satisfactory buyer (*Kimmell* v. *Skelly, supra,* p. 560), or that he was the procuring cause of the sale. (*Leonard* v. *Fallas,* 51 Cal.2d 649, 652 [335 P.2d 665].) The owner may breach the agreement by negotiating a sale in violation of the agreement (*Lowe* v. *Loyd, supra*) or by action which renders the broker's performance impossible. (*Alderson* v. *Houston,* 154 Cal. 1, 10 [96 P. 884].)

▊ In the case under review, the trial court expressly found that the contract here involved was an "exclusive right to sell" agreement, but denied recovery because the plaintiffs failed to use "due diligence in procuring a purchaser for the land." The court erred in applying the "due diligence" test inasmuch as such a finding is the equivalent of stating that the brokers failed to perform the contract by not procuring a buyer ready, willing and able to purchase on the terms specified in the listing agreement, which rule of performance by the broker is applicable only to general, non-exclusive agreements. (See *McCoy* v. *Zahn Corp.,* 183 Cal. 191, 195 [191 P. 20]; *Leonard* v. *Fallas, supra,* 51 Cal.2d 649, 652.)

▊ Inasmuch as a reversal is required and the subject of damages will necessarily constitute a significant issue upon retrial, a discussion of such issue is deemed advisable for the guidance of the trial court. The damages awarded in cases where exclusive broker agreements have been breached may be the full commission provided in the listing agreement where the property is withdrawn from sale by the owner's action.

(See *Baumgartner* v. *Meek,* 126 Cal.App.2d 505, 510 [272 P. 2d 552].) The 10-acre parcel embraced within the listing agreement here was sold for a price less than that provided in the listing agreement, and it should be further noted that the remaining 5 acres were not withdrawn from sale by the owner, and theoretically, the plaintiffs were at liberty to sell the remaining 5-acre parcel at any time during the period of the listing agreement. Consequently, the measure of damages should be limited to a percentage of the sales price actually obtained inasmuch as the agreement herein explicitly provides that "[O]wner agrees to pay . . . brokers 10% of the *selling* price in the event that during the period of this agreement . . . said property is sold or exchanged by [brokers] or any other person including owner." [Italics supplied.] It necessarily follows that upon retrial the court must limit plaintiffs' recovery of a broker's commission to the selling price secured by the defendants in the sum of $2,600 per acre for the 10-acre parcel.

Judgment reversed.

McCabe, P. J., and Tamura, J., concurred.