[Civ. No. 9613. Second Appellate District, Division One.—March 6, 1936.]

MABEL E. PRATT, Appellant, v. H. C. HOPPER et al., Respondents.

Otto A. Gerth for Appellant.

Benjamin W. Shipman for Respondents.

WHITE, J., *pro tem.*—This is an appeal by the plaintiff from a judgment entered against her in an action brought to recover a deficiency on a note secured by trust deed after the security was sold. This appeal involves only the defendants H. C. Hopper and Raleigh P. Trimble. As far as the defendants F. W. Payne and Mitchell Mayer are concerned, they are not involved in this appeal, the record indicating that defendant Payne has not been served with summons and that defendant Mitchell Mayer, also known as M. Numier, was served, failed to appear or plead in the action, and a default judgment was entered against him.

Defendants Hopper and Trimble each interposed a general and special demurrer in the lower court. The demurrers were sustained without leave to amend as to the first and third

causes of action, and sustained as to the second cause of action with leave to amend. Upon failure of plaintiff to amend, a judgment was entered in favor of the respondent defendants herein.

Plaintiff's amended complaint contained three causes of action, the first of which proceeds upon the theory that the defendants used the name of Mitchell Mayer as a trade or fictitious name to cover the transaction which they had with plaintiff; that they appointed and authorized Mitchell Mayer to act for them and each of them as agent, and that whatever transaction he consummated he consummated for all of them, jointly and severally; that the negotiations were carried on for Mitchell Mayer and the other defendants by Raleigh P. Trimble, and that he, Trimble, withheld from the plaintiff and refused to disclose to her the names of H. C. Hopper and F. W. Payne, two of the defendants, and who were the persons who really took over the premises in question and for whom the transaction was consummated.

As part of plaintiff's complaint she attached thereto as exhibits the grant deed she executed to the defendant Mitchell Mayer to the real property in question; the deed of trust executed by Mitchell Mayer, grantee in the aforesaid deed, as trustor, to California Trust Company as trustee, and naming Mabel E. Pratt, grantor in the aforesaid deed, as beneficiary; and also a grant deed executed to the property in question by Mitchell Mayer to the defendants Hopper and Payne. All the exhibits show that the defendant Mitchell Mayer signed in his individual capacity, and not as agent for the defendants. The exhibits do not show either that a trade name was used or that the parties thereto were copartners.

Section 3099 of the Civil Code reads as follows:

"3099. Liability on Instruments. No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name."

The rule embodied in this section of the Civil Code is simply expressive of the law merchant. An undisclosed principal has been held liable except in cases of negotiable instruments and specialties, but the law seems well settled that in the case of negotiable instruments an undisclosed principal could not

be charged at any time. In the case of negotiable instruments this restriction arises, not by reason of the status of the parties, but by reason of the character of the instrument. When a negotiable instrument is executed by an agent without sufficiently indicating on its face who the principal is, parol evidence cannot be introduced to charge the principal, although the agent executed the instrument as an agent. This exception to the rule is based upon the reason that each party who takes a negotiable instrument makes his contract with the parties who appear on its face to be bound for its payment; and in suits upon negotiable instruments no evidence is admissible to charge any person as principal thereto unless his name in some way is disclosed on the instrument itself.

This seems to be the uniform rule, and the necessity for uniformity in the interpretation and application of rules concerning negotiable instruments is commented on in *Nelson Co.* v. *Morton,* 106 Cal. App. 144, 149 [288 Pac. 845], where the court says:

"Justice Holmes has taught us, however, that law does not always keep step with logic. And in an attempt to penetrate the meaning of words or phrases of a statute affecting common business transactions, it is not wise to take more thought of the husk than of the corn in the husk. Much of the confusion hitherto existing in the decisions, characterized by the United States Supreme Court in *Falk* v. *Moebs,* 127 U. S. 597 [8 Sup. Ct. 1319, 32 L. Ed. 266], as 'the anarchy of the authorities' and which led to the formulation of section 20 of the Negotiable Instruments Act, was caused by judicial blindness to mercantile usage and a straining after overnice distinctions, which have served but to perplex the man of affairs. Upon questions affecting negotiable instruments it is far more important to have uniform rules than inerrant logic; and uniform laws must necessarily fail of their purpose unless there is uniformity in their interpretation and application. *(Utah State National Bank* v. *Smith,* 180 Cal. 1, 3, 4 [179 Pac. 160].)"

In 1923 the legislature amended section 3265 of the Civil Code to provide that the negotiability of a promissory note, otherwise negotiable in form, secured by a mortgage or deed of trust upon real or personal property, shall not be affected or abridged by reason of a statement therein that it is so se-

cured, nor by reason of the fact that said instrument is so secured, nor by any conditions contained in the mortgage or deed of trust securing the same.

The instrument in question here was therefore a negotiable instrument, and as the trial court appropriately announced in its memorandum decision sustaining the demurrers, ''to hold that one can go behind the face of a negotiable promissory note to show the facts is to nullify section 3099, Civil Code''. The demurrers as to the first cause of action were properly sustained without leave to amend.

The second cause of action proceeds upon the theory that plaintiff sold the real estate to the defendant Mitchell Mayer, taking part cash, the balance of the purchase price being represented by a note and trust deed, which real estate was in turn sold by Mitchell Mayer to the defendants Hopper and Payne; that said defendants, Hopper and Payne, bought the real estate in question from Mayer for $10,500, paying $3,000 cash, the balance of said purchase price to be made by the assumption on the part of Hopper, Payne and Trimble of the balance due and owing by Mitchell Mayer to the plaintiff, Mabel E. Pratt. The second cause of action, in other words, alleges that the defendants Hopper, Payne and Trimble became the parties primarily responsible to plaintiff, through the deal they had with Mayer, for the balance of the purchase price due from Mayer to the plaintiff under the original transaction between plaintiff and defendant Mayer.

Nothing appears in the exhibits attached to plaintiff's complaint showing any assumption by respondents of the obligation due under the trust deed executed by Mayer to plaintiff, and in fact the record indicates that the grant deed executed by defendant Mayer to defendants Hopper and Payne was executed June 30, 1930, which was three days prior to the execution, on July 3, 1930, of the note and trust deed which was the basis of the obligation of Mayer to plaintiff. The court below sustained the demurrers as to the second cause of action because of the belief that said cause of action was predicated upon a promissory note signed by an actual person and upon an allegation of a promise by these respondents, who were the demurring defendants in the lower court, to assume liability; and that such liability is not tenable unless it rests upon a separate promise, supported by a separate considera-

tion, and either made for plaintiff's benefit or directly to plaintiff. With the holding of the trial court in this regard we are in accord. The demurrers to the second cause of action were properly sustained. (*Case* v. *Egan,* 57 Cal. App. 453, 455 [207 Pac. 388]; *Bean* v. *Reicker,* 120 Cal. App. 403 [7 Pac. (2d) 1055].)

The third cause of action proceeds upon the theory of fraud alleged to have been practiced upon plaintiff by the defendants. The basis of the fraud, as alleged in the complaint, is that at the time of the negotiations leading up to the sale of the land in question by plaintiff, in June or July, 1930, defendant Trimble represented to plaintiff that he, Trimble, was representing rich, responsible, and financially able purchasers, but did not care to disclose their names; that they were oil men and did not want their connection openly disclosed; that Trimble represented to plaintiff that the men he was representing were well able to pay the purchase price. Plaintiff further alleges that she relied upon such representations, but that the facts were that defendants used a man by the name of Mitchell Mayer, who was a clerk working for defendant Hopper at a small salary, as the party in whose name the premises should be taken, and who made the note and trust deed, but who had no financial standing whatsoever. Plaintiff alleges that through the deceit and misrepresentations practiced upon her by the defendants they obtained possession and control of the land for the sum of $3,000, held it until they ascertained there was no oil on the territory, and then defaulted in the payment of instalments due under the note secured by the deed of trust. Plaintiff alleges that had she known the real purpose of defendants she would not have conveyed the property except for cash, which she alleges she was able at the time to obtain, because the premises actually had a market value of $10,500, which market value was reduced to $2,000 by the time of defendants' default and plaintiff's foreclosure.

From the allegations contained in plaintiff's third cause of action, it is apparent that, while she knew that other persons were interested in the transaction, yet she accepted Mitchell Mayer as the sole maker of the note and the sole purchaser, and now attempts, in a restatement of her first cause of action, to hold such undisclosed principals, because, regardless of the

manner in which it is stated, that is the evident and apparent theory of appellant. And for the same reasons that justified the court in sustaining the demurrers as to the first cause of action, without leave to amend, the court was correct in sustaining the demurrers to the third cause of action, without leave to amend. Regardless of the language with which the third cause of action is clothed, it fails to conceal the fact that it is predicated upon an attempt to hold an undisclosed principal to a negotiable instrument. As pointed out by us in our discussion of the first cause of action, this cannot be done.

The record in this case indicates that plaintiff has already obtained a judgment against the agent of the alleged undisclosed principals. While the rule in this state is that an action may be brought against both an agent and his undisclosed principal, the plaintiff may not have judgment against both, but before the close of the case on the trial must elect whether he will take judgment against one or the other. Should this case proceed to trial, plaintiff having already obtained a judgment against the agent, these respondents, by invoking the rule of election, could defeat appellant's right to a judgment against respondents, after she had taken judgment against the agent, Mayer. (*Craig* v. *Buckley,* 218 Cal. 78, 81 [21 Pac. (2d) 430].)

The judgment appealed from is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 30, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1936.