[Civ. No. 7944. Third Dist. Aug. 13, 1951.]

A. R. McEWEN, Respondent, v. RAY E. TAYLOR, Appellant.

L. C. Anderson for Appellant.

Burke & Rawles for Respondent.

VAN DYKE, J.—Plaintiff brought this action against defendants Taylor and Voudouris by complaint wherein he alleged that on June 19, 1947, defendants became indebted to him in the sum of $3,992.32 for lumber sold and delivered by him to them at their request. The pleading is in the form of a common count. Some six months after the complaint was filed and at plaintiff's request the clerk of the court entered the default of Voudouris, but no judgment was then entered against him. Defendant Taylor, after his demurrer was overruled, answered, generally denying the allegations of the complaint as to him. The case was tried and thereafter findings of fact were signed by the trial court which found that all the allegations of the complaint were true. No specific findings were made. Judgment was entered against both defendants in the sum prayed for plus interest and costs. Defendant Taylor has appealed from the judgment. He has also noticed an appeal from his order denying his motion for new trial, but such an appeal does not lie.

We shall refer to the plaintiff as respondent and to defendant Taylor as appellant. Some facts were developed at the trial which are without dispute. Voudouris, who has not appealed from the judgment, though it went against both himself and appellant Taylor, was shown without conflict to have been what in the trade is known as a "finder" or "scout," whose business it was to find lumber suitable for

the needs of a buyer, to inform the buyer where the lumber could be procured, and generally to arrange a purchase and sale of the lumber. For this the buyer would pay a finder's fee. Voudouris was engaged in that business during the period when respondent's lumber was shipped from Longvale, near Willits, to Sacramento. It fairly appears from the record that all parties realized at the trial that for respondent to hold appellant liable for the debt sued on he must show Voudouris to have been the agent, disclosed or undisclosed, of appellant in the buying of the lumber and that the sale through such agency was in fact made to appellant. This was so because there was no evidence that any business relationship existed between appellant and Voudouris unless it be that of principal and agent.

Voudouris testified that about June 1, 1947, he contacted appellant by telephone, saying he had found some 60,000 feet of mill run redwood lumber near Willits which respondent wanted to sell; that he informed appellant as to the quality of the lumber and the price and that appellant, as the witness put it, "accepted it" and directed him to have the lumber shipped to certain planing mills in the Sacramento area. He further testified that appellant thereafter paid him his commission of $200 on the first 40,000 feet of lumber so delivered, but that he had not received his commission on the rest of the lumber. Voudouris also said that upon the direction of appellant he had the lumber hauled by truckers Farr and Vercuyssen. These truckers almost immediately demanded of appellant that he pay the freight charges and, although appellant denied that he had purchased the lumber, it appeared that he did make out a check payable to the truckers and Voudouris for $479.70, which Voudouris endorsed over to the truckers and which check bore the notation "Payment of freight upon lumber from Longvale to Sacramento." Later on appellant drew a check for $147.81, which amount was the balance of the freight charge. Appellant, concerning these checks, explained that he drew them only for the purpose of enabling the truckers to get their money and that as consideration he bought from Voudouris sufficient lumber from the quantity shipped to offset the amount of the checks. He also said that later on he bought more of the lumber from Voudouris and the check therefor was, at Voudouris' request, made payable directly to respondent. These explanations of appellant, however, are in conflict with the inferences that may be drawn and in conflict also with the testimony of

Voudouris who throughout his testimony maintained that appellant had purchased the lumber through him from respondent.

It is without conflict that during the time the lumber was being purchased from respondent he, the respondent, had no direct ·dealings or communications with appellant, but dealt entirely with Voudouris and from this it results that it is only on the theory of agency that respondent could be found to have sold the lumber to appellant.

Before discussing the specific contentions of appellant, we further observe that appellant at no time sought to have respondent compelled to elect which defendant, agent or undisclosed principal he would hold.

■ Appellant first contends that "the finding of sale and delivery of the lumber to the appellant is unsupported by the evidence" and he argues that the record shows affirmatively the respondent and the appellant at no time came to an agreement concerning the sale of lumber to appellant. However, the testimony we have hereinbefore recited, while conflicting sharply with that of appellant was, nevertheless, sufficient to have sustained a finding of sale and delivery to appellant through the agency of Voudouris.

■ Appellant next contends that Voudouris was not appellant's agent and that the evidence is insufficient to support a finding to that effect. The same evidence which we have referred to, however, would support such a finding of actual agency.

Appellant next contends that if a finding of agency in fact was supported by the evidence, yet appellant Taylor had been released from liability by the act of respondent in first causing the default of Voudouris to be entered and next in taking judgment against Voudouris. As we have stated, the entry of judgment against Voudouris occurred simultaneously with the entry of judgment against appellant, and the judgment in form is joint and several against both. The contention that when respondent caused the entry of the default of Voudouris he thereby elected to hold him only and not to proceed further against the undisclosed principal is disposed of by the cases of *Klinger* v. *Modesto Fruit Co., Inc.,* 107 Cal.App. 97 [290 P. 127], and *Sears* v. *Whiston,* 139 Cal.App. 682 [34 P.2d 818]. ■ In such actions it is true that in theory at least the plaintiff cannot hold both the agent and the undisclosed principal and must upon demand of the principal or the agent elect which he will hold. ■ This election, however, is not

required until the plaintiff has obtained sufficient knowledge as to the status of the alleged principal so as not only to enable him to make an intelligent election, but to require him in fairness to do so. Since the default is entered upon failure to appear in response to service of summons and complaint it would ordinarily be true that the plaintiff at that time had no such knowledge. At that point in the proceeding the proof is not in and the plaintiff is in no better position to make an election than at the time of filing the complaint. ■ As stated in *Klinger* v. *Modesto Fruit Co., Inc.*, the proper time for an election to be made is before entry of judgment but after, in cases of conflict, the issue of agency or none has been settled by the findings. Said the court therein at page 103:

"... It is illogical and unjust to require a creditor on his own initiative and without a demand or motion to make an election as to whether he will seek to hold an agent or his principal liable upon an obligation. This would require him to speculate upon the decision of the court regarding the relationship of the principal and agent. An election before the rendition of judgment might not accord with the court's view of the relationship as disclosed by the evidence. A premature choice might result in an erroneous selection and a total loss of a valid claim. Conflicting evidence regarding the liability of the agent or his principal would require the affirmance of a judgment at variance with the election. The uncertainty and injustice of an erroneous election is apparent. The law will not require a litigant to gamble on his remedy. It would seem to be a wiser and better rule of procedure, where there is an issue or a doubt as to the relationship of a principal and agent, to require a motion for election to be made, and even then to hold the motion under advisement until the liability and relationship of the respective parties has been determined; and then render judgment accordingly. If both are found to be liable because of the relationship of agent and undisclosed principal, then the court should direct an election to be made and enter judgment accordingly. If the demand for an election is not raised by demurrer or motion during the progress of the trial by the party for whose benefit this doctrine is intended, it should be deemed to have been waived." ■ We conclude that the entry of default against Voudouris did not constitute an election.

■ Concerning appellant's contention that by taking judgment against Voudouris respondent elected to hold him and release appellant, it appears in the foregoing quotation from *Klinger* v. *Modesto Fruit Co.* that our courts have held that

in such an action as this election is not required until and unless the party entitled to the benefit of an election seeks by motion or otherwise to compel the election to be made and if no such action be taken by him then he has waived the right to compel such an election, and judgment against both the agent and the undisclosed principal may be upheld. (*Craig* v. *Buckley*, 218 Cal. 78 [21 P.2d 430] ; *Fleming* v. *Dolfin*, 214 Cal. 269 [4 P.2d 776, 78 A.L.R. 585] ; *Schwaegler* v. *Marchesotti*, 88 Cal.App.2d 738 [199 P.2d 331].)

▌ Appellant finally contends that the findings and judgment herein are not supported by the evidence and we think this contention must be sustained. Respondent chose to cast his complaint in the form of a common count and therein he alleged simply that upon a given date the defendants became indebted to him for lumber sold to them and for which they agreed to pay. The findings made by the court exactly accorded with these allegations. These allegations disclosed nothing of the plaintiff's real theory of the case, which quite apparently was that of agent and undisclosed principal, either of whom he might hold if the agency in fact existed, and the contract made, therefore, was in fact the contract of the undisclosed principal. The denials in appellant's answer were as broad as the allegations of the complaint. It is true there was no evidence at the trial upon which any joint and several liability, such as was alleged by the complaint, could have been adjudged. Had respondent seen fit to state the facts justifying an action based upon the theory of undisclosed principal, the situation with which we are now concerned could hardly have arisen. This he did not do, however, and his course of conduct in pleading as he did by common count, even though he expected to present a case of undisclosed principal, has good precedent to support it. In *McDevitt* v. *Chas. Corriea & Bros.*, 70 Cal.App. 245, 250 [233 P. 381], where the pleadings were in the same form as here and an undisclosed principalship was depended upon to fix the liability of the principal, the court said: "Under the allegations of the complaint, it was competent to prove whatever might have been the contractual relation existing between the defendants as to the transactions involved herein." Here the evidence on the subject of agency or undisclosed principalship was squarely conflicting and we have no specific findings that such a relationship existed between the two defendants. As was aptly said in *McDevitt* v. *Chas. Corriea & Bros.*, *supra*, where the findings, as here, were in the language of the complaint and the judgment was against both the agent

and the principal, "The findings, following as they do the language of the complaint, are not specific, and, taken alone or without reference to the judgment, it would be impossible to determine from them what the decision of the court is as to the legal relation existing between the defendants in the business of purchasing the turkeys. In that condition of the findings, however, the presumption must be indulged that they support the judgment and the theory upon which it proceeds. The theory of the judgment upon its face is that the defendants, in the carrying out of the transactions upon which the action is founded, were both jointly and severally liable. Whether that theory was founded in the belief that a principal and his agent, as to any contract the latter has made within the scope of his authority as such for the former, are jointly or both jointly and severally liable thereon, cannot be ascertained from the findings."

In the instant case, with the evidence on agency conflicting, we cannot tell from the pleadings, findings and judgment whether the trial court believed that the agency did exist and therefore, in the absence of a motion to compel election gave judgment against both the agent and the principal or whether the trial court believed the agency did not exist but believed that, from the testimony, such relationship did exist as would justify the entry of judgment against both defendants upon a joint and several liability, as was done. If the latter situation prevailed, then the evidence does not support either the findings or the judgment, for joint and several liability was not proven. If the court intended to give judgment based upon the fact of agency then that fact should have been found, and since the evidence bearing thereon was conflicting the trial court alone can make that finding. But the finding made was of joint and several liability, which insofar as it tells us anything tells us the trial court found against the claim of agency. So considered, the evidence does not support the finding and the judgment against appellant must be reversed.

Since the case must be remanded it is necessary to set forth certain directions for the guidance of the trial court in view of the language used in *McDevitt* v. *Chas. Corriea & Bros., supra.* It was there stated that plaintiff, before the close of the trial and after the relationship of principal and agent has been established, must elect as between the principal and agent which he desires to hold liable by a judgment. From this proposition, the court then concluded that if on a retrial of the issues the court found that an undisclosed agency exist-

ed, the principal was entitled to judgment since the plaintiff had an unimpeached judgment against the agents.

The factual situation is the same in the instant case. Since the judgment as to appellant Taylor is reversed and Voudouris has not appealed, there now stands an unimpeached judgment against Voudouris. Should the trial court find an agency relationship existed between appellant and Voudouris, we hold that the result would not be that appellant Taylor would be entitled to a judgment since a judgment would already stand against the agent. This holding we recognize is contrary to the above mentioned language in the McDevitt case. However, the question of waiver of the right to an election was not before the court insofar as can be determined, and the statement that the plaintiff must demand the election we deem is disapproved by later cases. ▮ The right to an election operates in favor of the principal and agent, and it is their duty to seasonably make the demand. Such duty does not rest upon the plaintiff or third party creditor. (*Fleming* v. *Dolfin, supra,* at p. 271; *Craig* v. *Buckley, supra,* at p. 82.)

▮ We are, therefore, of the opinion that appellant has waived his right to force plaintiff to elect as to which party, the principal or agent, he intends to hold liable by a judgment, and if the trial court finds an agency relationship exists, an entry of judgment against the appellant principal will be proper, notwithstanding the existence of a judgment against the agent Voudouris.

For the reasons given the judgment against the appellant is reversed, but since it appears from the record that the case has been fully tried the cause is remanded to the trial court with instructions that from the evidence taken and from any additional evidence which the court for good cause may permit the parties to introduce, the court make findings adequate to settle the issues of fact presented and to thereupon render judgment in accordance therewith. The purported appeal from the order denying a new trial is dismissed.

Adams, P. J., and Schottky, J. pro tem., concurred.